with the FDA to clarify the Agency's questions. Many of Biopure's responses have been completed. However, some require the retrieval of source medical documents and/or historical blood transfusion data from clinical trial sites in various countries, which will take several months to complete.

Defendant Moore commented, in pertinent part, as follows:

In the best interests of our shareholders, today we've taken the steps necessary to more efficiently run our business while we complete our comprehensive response to all of the FDA's questions[.] We view the Agency's questions as a 'roadmap' to approval and have set a conservative, achievable target date for our response. We remain enthusiastically committed to commercializing Hemopure in the United States as expeditiously as possible."

32.     The statements referenced above in ¶¶ 25-28 and 30-31 were each materially false and misleading when made because they failed to disclose certain existing material facts, including, inter alia:

(a)     that Biopure had been notified by the FDA, as early as March/April 2003 that the Company's clinical trials of Hemopure for trauma applications had been put on hold due to "safety concerns" arising from adverse clinical data reviewed by the FDA in connection with the Company's BLA for Hemopure orthopedic applications;

(b)     that FDA approval of Biopure's BLA for commercial marketing of Hemopure in the United States was in serious doubt, and in any event could not have occurred sooner than late 2004; and

(c)     based on the foregoing, defendants' opinions, projections and forecasts concerning the Company and its operations were lacking in a reasonable basis at all times.

## THE TRUTH IS REVEALED

33.     On December 24, 2003, after the close of the market, Biopure issued a press release announcing that on December 22, 2003, it received a "Wells Notice" from the staff of the

13

(SEC) indicating the staff's preliminary decision to recommend that the SEC bring a civil injunctive proceeding against the Company relating to defendant's disclosures concerning its communications with the FDA about a trauma study protocol the company submitted to the Agency in March 2003 and about the Company's BLA for Hemopure. The press release stated in pertinent part as follows:

> Biopure submitted the trauma protocol for a Phase II clinical trial of Hemopure for the treatment of hemorrhagic shock casualties in the hospital setting, where red blood cell transfusions are available. The FDA placed this trauma protocol under a new IND that is separate from the company's previous IND and its BLA to market Hemopure for the treatment of acutely anemic adult patients undergoing orthopedic surgery and for the elimination or reduction of red blood cell transfusions in these patients. The protocol sought to administer up to 15 units of Hemopure, a proposed dosage that was 50 percent higher than administered in previous clinical trials.
>
> After the in-hospital trauma protocol was submitted to the FDA and the new IND was assigned, the Agency placed a clinical hold on the proposed trauma trial due to safety concerns. The FDA referred to a review of adverse event data from the company's Phase III orthopedic surgery trial, which was submitted in the BLA. The data from that Phase III trial has been previously presented at medical meetings.
>
> In May 2003, Biopure responded to the FDA's clinical hold and also filed the response as a BLA amendment because it discussed data previously submitted with the BLA. That amendment resulted in the FDA extending its BLA review period up to 90 days, as previously announced on May 30, 2003. The Agency also requested three additional pre-clinical animal studies of Hemopure in conscious swine to address its concerns regarding high-volume administration. After the company's responses, the FDA has twice declined to lift the clinical hold, most recently in a letter dated July 30, 2003.

The press release also indicated that regulatory approval of the Hemopure BLA would be postponed at least until the second-half of calendar 2004:

> A Biopure-requested meeting has been scheduled with the FDA on January 6, 2004, to discuss the BLA. If there are significant developments at or following this meeting, the company intends to report them promptly. Biopure still expects

14

to respond to the questions in the FDA's complete response letter by June 30, 2004.

34.  Market reaction to defendants' belated disclosures was swift and severe. On December 26, 2003, the first day of trading following Biopure's announcements, the price of Biopure common shares fell over 16% in value to close at $2.43 per share on trading volume of over 3 million shares.

## Undisclosed Adverse Information

35.  The market for Biopure's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Biopure's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Biopure securities relying upon the integrity of the market price of Biopure's securities and market information relating to Biopure, and have been damaged thereby.

36.  During the Class Period, defendants materially misled the investing public, thereby inflating the price of Biopure's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

(a)  that Biopure had been notified by the FDA, as early as March/April 2003 that the Company's clinical trials of Hemopure for trauma applications had been put on hold due to "safety concerns" arising from adverse clinical data reviewed by the FDA in connection with

15

the Company's BLA for Hemopure orthopedic applications;

(b) that FDA approval of Biopure's BLA for commercial marketing of Hemopure in the United States was in serious doubt, and in any event could not have occurred sooner than late 2004; and

(c) based on the foregoing, defendants' opinions, projections and forecasts concerning the Company and its operations were lacking in a reasonable basis at all times.

37. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Biopure's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Biopure and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

38. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

16

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Biopure, their control over, and/or receipt and/or modification of Biopure's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Biopure, participated in the fraudulent scheme alleged herein.

39. While defendants were issuing false and misleading statements about Biopure and its business, the Company completed two offerings of its common shares generating over $30.6 million in proceeds. In addition, Individual Defendants Rausch and Moore, together with other high-level Biopure insiders, directly or indirectly, disposed of over $1.6 million worth of personally-held stock, benefitting from the artificial inflation in Biopure's stock price their fraudulent scheme had created. The Individual Defendants sold shares during the Class Period as follows:

| NAME | DATE | Number of Shares | Price Per Share | Total Value |
|---|---|---|---|---|
| Carl W. Rausch (CTO) | 4/15/03 | 30,000 | $3.13 | $93,900 |
| | 6/5/03 | 2,000 | $6.06 - $6.07 | $12,000 |
| | 6/24/03 | 3,000 | $5.58 - $5.698 | $17,000 |
| | 6/25/03 | 2,700 | $5.80 - $5.97 | $16,000 |
| | 6/26/03 | 34,374 | $5.80 - $5.90 | $201,000 |
| | 6/27/03 | 20,000 | $5.95 - $6.00 | $120,000 |
| | 6/30/03 | 5,000 | $6.14 - $6.16 | $31,000 |
| | 8/5/03 | 10,000 | $7.50 - $7.53 | $75,000 |
| | 8/6/03 | 2,000 | $7.50 - $7.54 | $15,000 |

|  | 8/7/03 | 8,000 | $7.00 | $56,000 |
|---|---|---|---|---|
|  | 8/8/03 | 10,000 | $7.05 - $7.28 | $72,000 |
|  | 8/12/03 | 10,000 | $7.00 - $7.15 | $71,000 |
|  | 8/13/03 | 9,500 | $7.02 - $7.15 | $67,000 |
|  | 8/28/03 | 100,000 | $7.50 | $750,000 |
| **TOTAL PROCEEDS FOR RAUSCH:** |  |  |  | **$1,596,900** |
|  |  |  |  |  |
| Thomas A. Moore (CEO) | 8/7/03 | 8,750 | $2.42 | $21,175 |
| **TOTAL PROCEEDS FOR MOORE:** |  |  |  | **$21,175** |
|  |  |  |  |  |
| **TOTAL INSIDER PROCEEDS:** |  |  |  | **$1,618,075** |

40.    Individual Defendant Rausch, in fact, sold approximately 40% of his total holdings in Biopure common shares during the Class Period while in possession of material adverse nonpublic information concerning Biopure as described herein.

### Applicability of Presumption of Reliance: Fraud-on-the-Market Doctrine

41.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    (a)    the defendants made misleading statements and material omissions during the Class Period;

    (b)    Biopure securities traded on the NASDAQ which is in an efficient market;

    (c)    stock analysts and the media covered Biopure and its business during the

18

Class Period;

(d) the misrepresentations and material omissions alleged in this Complaint would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e) Plaintiff and the other Class members purchased their Biopure stock between the time the defendants made the misleading statements and material omissions and the time that the true facts were disclosed, without knowledge of the omitted facts.

42. Based upon the following, plaintiff and members of the Class are entitled to the presumption of reliance upon the integrity of the market.

## STATUTORY SAFE HARBOR PROVISION IS INAPPLICABLE

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Moreover, to the extent that Biopure purported to warn of risks associated with the Company, those so-called "risk disclosures" were boilerplate and did not meaningfully change during the Class Period to reflect the dynamic nature of the Company's business. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive

19

officer of Biopure who knew that those statements were false when made.

## COUNT I

### (Against All Defendants)
### For Violation Of Section 10(b) Of The Exchange Act and SEC Rule 10b-5

44. Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if fully set forth herein.

45. This Count is asserted against all defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

46. During the Class Period, defendants, singly and in concert, engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase Biopure securities during the Class Period at artificially inflated prices.

47. Throughout the Class Period, Biopure acted through the Individual Defendants, whom it portrayed and represented to the financial press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Individual Defendants is therefore imputed to Biopure, which is primarily liable for the securities law violations of the Individual Defendants while acting in their official capacity as a Company representative, or, in the

20

alternative, which is liable for the acts of the Individual Defendants under the doctrine of *respondent superior*.

48. The information that the defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of Biopure securities was artificially inflated during the Class Period. In ignorance of the duty to disclose the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Biopure securities. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

49. During the Class Period, the defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of Biopure common stock; (c) enable the Individual Defendants and other Biopure insiders to sell more than $1.6 million worth of their personally-held shares of Biopure common stock at artificially inflated prices; and (d) cause Plaintiff and other members of the Class to purchase Biopure stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

50. By reason of the foregoing, the defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) failed to disclose material information; or (c) engaged in

21

acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Biopure securities during the Class Period. All Defendants are sued as primary participants in the wrongdoing alleged.

51.     Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

## COUNT II

### (Against The Individual Defendants) For Violation Of Section 20(a) Of The Exchange Act

52.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Biopure within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, stock ownership and contractual rights, and participation in and/or awareness of Biopure's operations, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Biopure, including the wrongful acts alleged herein.

54.     The Individual Defendants, by reason of their executive positions and/or board membership, were the controlling persons of Biopure and had the power and influence to cause, and did cause, Biopure to engage in the conduct complained of herein. Thus, the Individual Defendants controlled the public dissemination of the false and misleading information alleged herein and were culpable participants in the wrongful conduct alleged herein.

55.     In particular, by virtue of their positions each of the Individual Defendants had

direct and supervisory involvement in the operations of Biopure, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations herein, and exercised the same. Such transactions included, without limitation, Biopure's dissemination of misleading public statements and failure to disclose adverse material facts regarding its financial condition.

56. By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of Biopure, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, the Individual Defendants are liable to Plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Biopure common stock during the Class Period.

## COUNT III

### (Against Individual Defendants Rausch and Moore) For Violation Of Section 20(A) Of The Exchange Act For Insider Trading

57. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58. During the Class Period, Individual Defendants Rausch and Moore sold common shares of Biopure while in possession of adverse material nonpublic information concerning Biopure as set forth in paragraph 39 above.

59. Defendants Rausch and Moore are liable to plaintiff and members of the Subclass as defined in paragraph 16 above for all profits gained in the above transactions.

60. Defendant Rausch and Moore, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Biopure, as specified herein.

61. These defendants employed devices, schemes and artifices to defraud and a course of conduct and scheme as alleged herein to unlawfully sell their Biopure common shares while in possession of adverse material nonpublic information concerning Biopure which operated as a fraud and deceit upon plaintiff and members of the Subclass.

62. At the time of the above sales by Defendants Rausch and Moore, plaintiff and other members of the Subclass were ignorant of the fact that these Defendants were in possession of adverse material nonpublic information about Biopure. Had plaintiff and the other members of the Subclass and the marketplace known of the truth concerning these sales they would not have acquired their shares of Biopure at the artificially inflated prices which they paid.

63. By virtue of the foregoing, defendants Rausch and Moore have violated Section 20(A) of the Exchange Act and are liable to plaintiff and members of the Subclass for all gains and profits in connection with their sales of Biopure common shares as set forth above in paragraph 16 above.

64. As a direct and proximate result of the Individual Defendants Rausch's and Moore's wrongful conduct, plaintiff and the other members of the Subclass suffered damages in connection with their respective purchases and sales of the Biopure common shares.

**WHEREFORE**, Plaintiff, on his own behalf and on behalf of the Class and Subclass, prays for judgment as follows:

A. Declaring this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages against defendants, jointly and severally, for damages suffered as a result of defendants' wrongdoing, in an amount to be proven at trial, together with interest thereon;

C. Awarding Plaintiff and members of the Subclass all profits gained from Individual Defendants Rausch's and Moore's sale of shares during the Class Period;

D. Awarding Plaintiff, the Class and the Subclass prejudgment and post-judgment interest, as well as the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts;

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial of all issues so triable.

DATED: January 6, 2004

Respectfully submitted,

By _____
GILMAN AND PASTOR, LLP
Peter A. Lagorio (BBO #567379)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
(781) 231-7850

**STULL, STULL & BRODY**
Jules Brody
Howard T. Longman
6 East 45th Street
New York, New York 10017
(212) 687-7230

**Attorneys for Plaintiff**

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

John G. Esposito, Jr. DDS. ("Plaintiff"), hereby certifies as follows:

1. I have reviewed the complaint being filed on my behalf and on behalf of all others similarly situated against Biopure Corporation ("Biopure") and certain of its officers and directors and authorize its filing or a substantially similar complaint on my behalf.

2. I did not purchase shares of Biopure, the security that is the subject of this action, at the direction of counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. To the best of my current knowledge, I purchased the following shares of Biopure during the class period referenced in the complaint:

| Date | Purchased or Sold | No. of Shares | Price per Share |
|---|---|---|---|
| 8/21/03 | Purchased | 600 | $8.22 |
| 8/12/03 | Purchased | 600 | $7.01 |
| 8/5/03 | Sale | 520 | $7.50 |

5. I have not served as a class representative in a federal securities case in the last three years.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7. The matters stated in this certification are true to the best of my current knowledge, information and belief.

8. I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED: January 2, 2004

John G. Esposito, Jr. DDS.